IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CYTONOME/ST, LLC,                          )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )
                                           )   C.A. No. 19-301 (RGA)
NANOCELLECT BIOMEDICAL, INC.,              )
                                           )   REDACTED -- PUBLIC VERSION
                    Defendant.             )
                                           )

**PLAINTIFF CYTONOME/ST, LLC'S BRIEF IN SUPPORT OF ITS *DAUBERT*
MOTIONS TO EXCLUDE AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

<div style="display:flex">

OF COUNSEL:

Kirt S. O'Neill
Daniel L. Moffett
George Andrew Lever Rosbrook
Clayton N. Matheson
Dorian Ojemen
AKIN GUMP STRAUSS HAUER & FELD LLP
112 E. Pecan Street, Suite 1010
San Antonio, TX 78205
(210) 281-7000

Thomas W. Landers IV
Hannah D. Price
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
(713) 220-5800

Original Filing Date: December 11, 2020
Redacted Filing Date: December 18, 2020

</div>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

*Attorneys for Plaintiff Cytonome/ST, LLC*

## TABLE OF CONTENTS

Page

I.    *DAUBERT* MOTION TO EXCLUDE DR. MEINHART'S OPINIONS THAT CONTRADICT THE COURT'S CLAIM CONSTRUCTION....................................1

    A.    Dr. Meinhart's "buffer" opinions contradict the Court's claim construction..........2

    B.    Dr. Meinhart's "absorbing" opinions contradict the Court's claim construction............................................................................................................3

    C.    Dr. Meinhart's "deflecting" opinions contradict the Court's claim construction............................................................................................................5

II.   MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT .........6

    A.    There is no genuine fact issue as to whether the Wolf "absorbs" a pressure pulse..........................................................................................................................6

    B.    There is no genuine fact issue as to whether the Wolf deflects a particle from the stream of particles. ......................................................................................7

    C.    There is no genuine fact issue as to whether the pressure pulses propagate "across" the channel..............................................................................................9

III.  MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED PATENTS ARE NOT INDEFINITE ..........................................................9

    A.    NanoCellect fails to present a viable indefiniteness theory. ...................................10

    B.    NanoCellect's so-called "factual disputes" already have been resolved as a matter of claim construction. ..................................................................................11

IV.   *DAUBERT* MOTION TO EXCLUDE THE "REASONABLE ROYALTY" DAMAGES ANALYSIS OF IVAN HOFMANN ...............................................16

    A.    Mr. Hofmann's reliance on Dr. Meinhart's "bubble" opinions renders his reasonable royalty analysis inadmissible. ............................................................16

    B.    Mr. Hofmann's analysis improperly fails to assume validity and infringement. ..........................................................................................................18

V.    *DAUBERT* MOTION TO EXCLUDE DR. MEINHART'S OPINIONS CONCERNING CYTONOME'S CONDUCT AT THE PATENT OFFICE.............19

CONCLUSION ...........................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Andrulis Pharm. Corp. v. Celgene Corp.*,
   2015 WL 3978578 (D. Del. June 26, 2015)........................................................6, 7

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017)................................................................14

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
   2020 WL 5409052 (D. Del. Sept. 9, 2020)...................................................13

*Dow Chem. Co. v. Nova Chems. Corp.*,
   629 F. Supp. 2d 397 (D. Del. 2009)..........................................................12

*EMC Corp. v. Pure Storage, Inc.*,
   2016 WL 775742 (D. Del. Feb. 25, 2016) ..............................................2, 4, 5

*Ferring Pharm. Inc. v. PAR Pharm., Inc.*,
   2016 WL 6471246 (D. Del. Oct. 28, 2016) ...................................................6

*Home Semiconductor Corp. v. Samsung Elecs. Co.*,
   2019 WL 3943334 (D. Del. Aug. 21, 2019) .................................................14

*M2M Sols. LLC v. Motorola Sols., Inc.*,
   2016 WL 767900 (D. Del. Feb. 25, 2016) (Andrews, J.) ................................17, 18

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)........................................................................10, 15

*Nuvo Pharms. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
   923 F.3d 1368 (Fed. Cir. 2019)...............................................................19

*Personalized User Model, LLP v. Google, Inc.*,
   C.A. 2014 WL 807736 (D. Del. Feb. 27, 2014) .............................................3

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...............................................................13

*Praxair, Inc. v. ATM, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008), *abrogated on other grounds by Nautilus*, 572
   U.S. ...................................................................................11

*Semcon Tech., LLC v. Micron Tech., Inc.*,
   2017 WL 2591945 (D. Del. June 15, 2017)....................................................4

*Skyhook Wireless, Inc. v. Google, Inc.*,
    2015 WL 13620764 (D. Mass. Feb. 18, 2015) .......................................................17

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005)................................................................10, 12

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    246 F.3d 1316 (Fed. Cir. 2001)..................................................................8, 9

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999)........................................................................15

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    365 F. Supp. 3d 466 (D. Del. 2019) (Andrews, J.) ................................................20

Plaintiff Cytonome/ST, LLC ("Cytonome") submits this Reply in support of its *Daubert* Motions to Exclude and Motions for Partial Summary Judgment (D.I. 131).  This Reply responds to the arguments raised in Defendant NanoCellect Biomedical, Inc.'s ("NanoCellect") Opposition to the *Daubert* and Summary Judgment Motions (D.I. 142).

## I.   *DAUBERT* MOTION TO EXCLUDE DR. MEINHART'S OPINIONS THAT CONTRADICT THE COURT'S CLAIM CONSTRUCTION

The opinions of NanoCellect's technical expert, Dr. Meinhart, relating to the "buffer," "absorbing," and "deflecting" limitations of the asserted claims are based on claim constructions that the Court squarely rejected at *Markman* and should be excluded.  NanoCellect spins Dr. Meinhart's opinions as merely applying the Court's claim constructions or explaining the claim terms' "plain and ordinary" meaning.  But even a cursory review of Dr. Meinhart's reports and testimony demonstrates otherwise.

Regarding the "buffer" limitation, the Court expressly construed the term to cover liquid-filled reservoirs, thereby rejecting NanoCellect's objection that "buffers" should be limited to gas-filled reservoirs.  D.I. 85 at 4.  Contrary to NanoCellect's contention, Dr. Meinhart does not simply apply the Court's construction to reach an opinion that ██████████████████████ ██████ He opines that ████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████ D.I. 132-1, Ex. 3 (Meinhart Rebuttal Report) ¶ 123.

Dr. Meinhart's opinions on "absorbing" and "deflecting" were likewise argued to the Court at claim construction and rejected.  The Court refused NanoCellect's request to add specific limitations to each claim's meaning and ordered that they be given their "plain and ordinary" meaning.  NanoCellect contends that, because the Court did not "affirmatively"

construe "absorbing" or "deflecting," Dr. Meinhart is free to make the same arguments to the

jury that NanoCellect made at claim construction.  But NanoCellect is wrong for at least two

reasons.  First, in ordering that "absorbing" and "deflecting" should have their plain and ordinary

meaning, the Court *did* "affirmatively" reject NanoCellect's narrow constructions.  NanoCellect

should not be allowed to re-urge those constructions to the jury through Dr. Meinhart.  Second,

Dr. Meinhart is not merely opining on the terms' "plain and ordinary" meaning, but rather is

"arguing a meaning to the jury . . . that [NanoCellect] already argued to the Court in the context

of claim construction," and relying on the prosecution history and dictionary definitions to

support his constructions.  *EMC Corp. v. Pure Storage, Inc.*, 2016 WL 775742, at *4 (D. Del.

Feb. 25, 2016).  This is impermissible claim construction and should not be allowed.  *Id.*

### A. Dr. Meinhart's "buffer" opinions contradict the Court's claim construction.

| "buffer" | | |
|---|---|---|
| **NanoCellect's Proposal** | **Court's Order** | **Dr. Meinhart's Opinion** |
| "[T]he 'buffer' requires a reservoir of compressible fluid, i.e., a gas." D.I. 84 at 1. | "Construing the term to require that the fluid which fills the buffer be compressible would incorrectly incorporate a narrowing limitation into the construction." D.I. 85 at 4. | ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ D.I. 132-1, Ex. 3 ¶ 108. |

Despite the Court's order that a "buffer" may contain liquid or gas, Dr. Meinhart

repeatedly asserts that ████████████████████████████ NanoCellect claims

that Dr. Meinhart's analysis █████████████████████████████ D.I.

142 at 14.  But the only issues of ████████████ that Dr. Meinhart raises go to the heart of

claim construction and were already raised at *Markman*.  Dr. Meinhart opines that ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ D.I.

132-1, Ex. 3 (Meinhart Rebuttal Report) ¶ 59.  Dr. Meinhart's opinion that ██████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████ hinges on this construction, ████████████████

██████████████████ *Id.* ¶ 108.  Because Dr. Meinhart's "buffer" opinions are

inconsistent with the Court's construction, they should be excluded.  *Personalized User Model,*

*LLP v. Google, Inc.*, C.A. 2014 WL 807736, at *4 (D. Del. Feb. 27, 2014).

### B.  Dr. Meinhart's "absorbing" opinions contradict the Court's claim construction.



| "absorb" | | |
| --- | --- | --- |
| NanoCellect's Proposal | Court's Order | Dr. Meinhart's Opinion |
| "to receive without recoil or echo" D.I. 66 at 8. | "[A]nd that's particularly to say that I reject NanoCellect's proposed construction." D.I. 81 at 42:24-25. | ████████████████████████ ████████████████████████ ████████████████ D.I. 132-1, Ex. 3 ¶ 74. |

Dr. Meinhart's opinions regarding "absorbing" rely on NanoCellect's rejected argument

that the term requires receiving a pressure pulse "without recoil or echo."  *See* D.I. 66 at 8; D.I.

81, 42:24-25.  NanoCellect asserts that Dr. Meinhart is applying a different "plain and ordinary"

meaning of "absorbing" in his analysis, but his reports and testimony unequivocally refute that

argument.  As shown in Appendix B to the Motion, Dr. Meinhart ████████████████████████

████████████████████████████████████ D.I. 131-2; *see also* D.I. 132-1, Ex. 3

(Meinhart Rebuttal Report) ¶ 74 ("████████████████████████████████████"), ¶ 79

("████████████████████████████████████████████"), ¶ 81

("████████████████████████████████").  Dr. Meinhart also repeatedly

confirmed at his deposition that █████████████████████████ *See* D.I. 134, Ex. 25

at 199:6-9 (██████████████████████████████████████████"); *see also id.* at

87:19-23, 116:2-3, and 120:22-24 (same).

3

In a tacit acknowledgement that Dr. Meinhart is applying the same construction of "absorb" that it requested at *Markman*, NanoCellect argues that he is free to do so because "[t]he Court did not provide an affirmative construction for the term." D.I. 142 at 12. But as this Court has held, a "plain and ordinary" meaning construction is not a license for experts to reargue a rejected claim construction. *Semcon Tech., LLC v. Micron Tech., Inc.*, 2017 WL 2591945, at *6 (D. Del. June 15, 2017). The Court in *Semcon* reached this holding after it had rejected the plaintiff's attempt to obtain a narrow definition of the claim term "uniform" at *Markman*, ruling instead that the "plain and ordinary meaning" applied. *Id*. On summary judgment, the plaintiff asserted that the plain and ordinary meaning of the term "uniform" should be narrow, asserting that the term refers only to the thickness of the relevant materials. *Id*. The Court flatly disagreed, explaining that the "[p]laintiff's attempt to narrow the definition to limit 'uniform' to material thickness" was "a position I have already rejected." *Id*. Simply put, the mere fact that the Court construed the term to carry its plain and ordinary meaning did not entitle the plaintiff "to re-litigate a position [the Court] already rejected." *Id*.

None of the cases that NanoCellect cites in its Opposition remotely suggest that an expert may reargue a rejected claim construction position under the guise of analyzing a term's "plain and ordinary" meaning. Two of those cases are wholly inapposite.[1] And in *EMC Corp. v. Pure Storage, Inc.*, the court held that "parties may introduce evidence as to the plain and ordinary meaning of the terms not construed by the Court . . . *so long as* the evidence does not amount to arguing claim construction to the jury." 2016 WL 775742 at *4 (emphasis added). *EMC Corp.*

---

[1] In *Avid Tech., Inc. v. Harmonic, Inc.*, the disputed term was never raised during claim construction and, therefore, no contradictory claim construction existed. 2014 WL 7206301 (D. Del. Dec. 17, 2014). And in *TQ Delta, LLC v. ADTRAN, Inc.*, unlike here, there was no inconsistency between the construction rejected at claim construction and the position the challenged expert took in his report. 2019 WL 5626638 (D. Del. Oct. 31, 2019).

specifically identifies NanoCellect's strategy of "arguing a meaning to the jury through its expert that it already argued to the Court in the context of claim construction," as off-limits because "that truly would be 'arguing claim construction to the jury.'"

### C.  Dr. Meinhart's "deflecting" opinions contradict the Court's claim construction.

| "from the stream of particles" | | |
|---|---|---|
| **NanoCellect's Proposal** | **Court's Order** | **Dr. Meinhart's Opinion** |
| "from the continuous moving procession of fluid and particles" D.I. 66 at 22. | "I'm going to construe . . . from the stream of particles to have its plain and ordinary meaning.  I don't think the fluid should be included in it . . . " D.I. 81 at 95:24-96:1. | ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ D.I. 132-1, Ex. 3 ¶ 60. |

Dr. Meinhart's opinion that "deflecting a particle from the stream of particles" somehow requires ████████████████████████████████████████████████ ████████████████████████████████████ is based on another rejected claim construction.  *See* D.I. 131 at 9-14; D.I. 81, 93:13-17, 95:24-96:3.  NanoCellect does not even dispute that Dr. Meinhart is interpreting "from the stream of particles" to mean "from the continuous moving procession of *fluid and* particles."  D.I. 66 at 22 (emphasis added).  Instead, NanoCellect again argues that, because the Court gave the term "from the stream of particles" its "plain and ordinary" meaning, Dr. Meinhart is free to reargue NanoCellect's rejected construction.  That is not the law.

NanoCellect's attempt to improperly reargue this claim construction is particularly blatant.  At his deposition, Dr. Meinhart admitted that ██████████████████████████ ████████████████████████████████████████████████████████████████████ D.I. 134, Ex. 25 at 61:9-20, 67:21-68:8.  In fact, NanoCellect admits that Dr. Meinhart's "plain and ordinary" meaning testimony will involve analyzing prosecution history statements

regarding Dunaway, an unasserted prior art reference.  D.I. 142 at 17.  But delving into the prosecution history to interpret terms "would constitute impermissible claim construction" and has no place in front of the jury.  *Ferring Pharm. Inc. v. PAR Pharm., Inc.*, 2016 WL 6471246, at *1 (D. Del. Oct. 28, 2016).  This is especially so given that the Court already heard and rejected this same Dunaway-based argument at *Markman*.  D.I. 66 at 24.

NanoCellect's reliance on the testimony of Dr. Gilbert and Dr. Desphande—two of the inventors on the asserted patents (*see* D.I. 142 at 18-19)—further demonstrates NanoCellect's intent to reargue claim construction.  To be clear, none of the testimony remotely suggests that the inventors understand "deflecting a particle from the stream of particles" to require diverting a particular particle with a pressure pulse without affecting any of the surrounding media.  And as this Court has observed, an inventor's testimony about the meaning of a patent claim term is essentially "useless" in the claim construction process, particularly when—as here—the testimony came long after the relevant patent applications were filed.  *Andrulis Pharm. Corp. v. Celgene Corp.*, 2015 WL 3978578, at *5 (D. Del. June 26, 2015).  But regardless, reliance on inventor testimony to interpret claims is still claim construction and thus improper at this stage.

## II.      MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT

In the Motion, Plaintiff showed that NanoCellect's only non-infringement theories rely on claim construction arguments that the Court rejected at Markman.  *See* D.I. 131 at 14, 22-24.  In response, NanoCellect attempts to use those same arguments to generate purported "fact issues" that, according to NanoCellect, preclude summary judgment.  Those so-called "fact issues," however, already have been resolved and simply cannot support denying the Motion.

### A.  There is no genuine fact issue as to whether the Wolf "absorbs" a pressure pulse.

NanoCellect asserts that there is a "fact issue" as to "whether the physical properties of the Wolf in fact absorb or dampen a pressure pulse" (D.I. 142 at 21), but the essential facts about

how the Wolf operates are undisputed, and the only purported "fact issue" is based on a rejected claim construction.  In addition to arguing that ███████████████████████████████████ ███████████████████████████ (*id.* at 13), NanoCellect also asserts that ████████████████ ██████████████████████████████████████████████ a position that also contradicts the Court's construction of "absorb."  For example, NanoCellect asserts that ███████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* at 23 (emphasis added). This is just a slightly re-worded variation of NanoCellect's rejected claim construction argument that pressure pulses must be absorbed "without recoil or echo."  Indeed, Dr. Meinhart testified explicitly at his deposition that, ██████████████████████████████████████████████ ████████████████████████ D.I. 134, Ex. 25 at 88:1, 116:3-4 (emphases added).  Since the Court already rejected this position, it cannot create a genuine fact issue for trial.

**B.** **<u>There is no genuine fact issue as to whether the Wolf deflects a particle from the stream of particles.</u>**

NanoCellect alleges that there is a "fact issue" about whether a particle is deflected from the stream of particles in the Wolf sorter (D.I. 142 at 25), but this argument also runs afoul of the Court's claim construction.  According to NanoCellect, the █████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 26 (emphasis added).  This argument, in turn, is based on Dr. Meinhart's impermissible assumption that ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 17; *see also, e.g.*, D.I. 132-1, Ex. 3 (Meinhart Rebuttal Report) ¶ 68 ███████████████████████████████████████████████████████████████████



███████████████████ (emphasis added).  The Court, however, rejected NanoCellect's

request at *Markman* to construe the "stream of particles" to include the fluid.  D.I. 81, 93:15-17.

So there is no genuine fact issue here either.

NanoCellect further argues that the Wolf does not infringe because ████████████

█████████████████████████████████████████ (D.I. 142 at 25-26),

but this is also insufficient to avoid summary judgment.  This argument is little more than an

attempt to re-litigate NanoCellect's failed argument at *Markman* that the patent applicants

allegedly disclaimed devices like Dunaway, which divert the entire fluid path when sorting.  *See*

D.I. 81 at 95:5-12, 99:8-108; D.I. 66 at 22-27.  Dr. Meinhart's ████████████████

████████ also is entirely conclusory.  He does not ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████  D.I. 132-1, Ex. 3 (Meinhart Rebuttal Report) ¶¶ 70, 73.  Instead, he simply asserts—

without support—███████████████████████████ *Id.*  Such a conclusory

assertion is "not sufficient to establish a genuine issue of material fact."  *Telemac Cellular Corp.*

*v. Topp Telecom, Inc.*, 246 F.3d 1316, 1329 (Fed. Cir. 2001).

Finally, NanoCellect argues, based on a deliberately myopic reading of Plaintiff's

expert's infringement report, that Plaintiff's expert (Dr. Vacca) failed to support his opinion that

the Wolf deflects particles from the stream of particles.  D.I. 142 at 26.  NanoCellect, though,

focuses only on a single sentence from a summary paragraph in Dr. Vacca's report, completely

ignoring Dr. Vacca's in-depth analysis—cited in the Motion—showing how this claim element is

met.  *See* D.I. 131 at 21 (citing D.I. 133, Ex. 8 (Vacca Opening Report) ¶¶ 72-78).[2]

    **C.**  **There is no genuine fact issue as to whether the pressure pulses propagate "across" the channel.**

Finally, NanoCellect's Opposition fails to establish a genuine fact issue with regard to the requirement of claim 1 of the '797 Patent that the pressure pulse is propagated "across" the main microfluidic channel.[3]  In arguing otherwise, NanoCellect cites to three paragraphs from Dr. Meinhart's Rebuttal Report.  D.I. 142 at 27 (citing D.I. 132-1, Ex. 3 ¶¶ 106, 113, and 171).  However, paragraph 113 contains ███████████████████████████████████████ ████████████████████████████████████████████  And paragraphs 106 and 171 contain only ████████████████████████████████████████ ███████████████████████████████████████████████  This is not enough to preclude summary judgment.  *Telemac*, 246 F.3d at 1329.  And since Dr. Meinhart, by arguing that ████████████████████████████ effectively admits that the pressure pulse does in fact propagate across the channel, summary judgment clearly is warranted.

**III.**    **MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED PATENTS ARE NOT INDEFINITE**

Cytonome is entitled to summary judgment of no indefiniteness because NanoCellect's arguments are based on rejected claim constructions, a misapprehension of the law on

---

[2]    Dr. Vacca analyzed ████████████████████████████████ ████████████████████  D.I. 133, Ex. 8 (Vacca Opening Report) ¶¶ 72-74.  He further analyzed NanoCellect documents describing how the ████████████████████████████████████ (*id.* ¶¶ 75-76), and ████████ (*id.* at ¶¶ 77-78).

[3]    NanoCellect also purports to establish the same fact issue with regard to claim 7 of the '850 Patent, which includes a similar limitation requiring that the pressure pulse "is applied across the duct."  D.I. 142 at 28.  Cytonome's arguments here apply equally to that claim limitation.

indefiniteness, or both.  NanoCellect argues that a person of ordinary skill would disagree with the Court's constructions, and that applying those constructions to the claims would necessarily render the claims indefinite.  This circular reasoning cannot support "indefiniteness" because it completely fails to apply the proper standard—namely, whether the properly construed claims fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  Moreover, because each of NanoCellect's indefiniteness arguments is premised on a claim construction that the Court already considered and rejected at *Markman*, the supposed "fact issues" that NanoCellect tries to inject into the case were already resolved as a matter of law.

### A.  NanoCellect fails to present a viable indefiniteness theory.

Each of NanoCellect's "indefiniteness" arguments fails as a matter of law because none of them addresses the proper standard.  Instead of arguing that the scope of any claim is uncertain, NanoCellect argues that certain claim terms are "indefinite" because Plaintiff's infringement positions are inconsistent with NanoCellect's interpretation of those terms.  For example, based on misconstrued statements in the prosecution history, NanoCellect argued (unsuccessfully) at *Markman* that the phrase "deflecting a particle . . . from the stream of particles" requires deflecting a particle into "carrier fluid" *without* redirecting the flow of the "suspension" fluid that immediately surrounds the particles.  D.I. 81 at 101:13-104:4; *see also* D.I. 81 at 95:5-12, 99:8-108:15; D.I. 66 at 22-27.  NanoCellect relies on the same rejected construction and prosecution history for indefiniteness, arguing that there is an "inconsistency" between how Plaintiff maps the "deflecting" limitation to the Wolf and NanoCellect's rejected prosecution-based claim construction arguments.  This purported "inconsistency," even if it exists, cannot support a claim of indefiniteness.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005) ("The test for indefiniteness does not depend on a

potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention.").  Indefiniteness turns on a skilled artisan's understanding of the scope of the claims as construed by the Court, not on whether there are inconsistencies between how the accused device operates and statements made during prosecution.

NanoCellect tries a similar tactic with "buffer" and "absorbing."  At *Markman*, NanoCellect tried to avoid infringement by arguing that "absorbing" means "to receive without recoil or echo," and that a "buffer" requires "compressible gas."  D.I. 85 at 3-5.  The Court rebuffed those efforts.  NanoCellect now argues that the claims are indefinite ████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████  D.I. 142 at 32-35.  At best, this argument amounts to rearguing claim construction.  At worst, it is a blatant violation of the Court's claim construction order.  Either way, it cannot support a finding of indefiniteness.

**B.  NanoCellect's so-called "factual disputes" already have been resolved as a matter of claim construction.**

NanoCellect's indefiniteness claims further fail because the supposed "fact issues" underpinning them hinge entirely on rejected claim construction positions, as discussed above. Resolving indefiniteness issues at *Markman*, as the Court did here, is appropriate because "[i]ndefiniteness is a matter of claim construction."  *Praxair, Inc. v. ATM, Inc*., 543 F.3d 1306, 1319 (Fed. Cir. 2008), *abrogated on other grounds by Nautilus*, 572 U.S. at 901.  NanoCellect simply tries to transform resolved legal issues into fact disputes by having its expert offer opinions on them, which cannot defeat summary judgment.  *See id.* at 1321 (Fed. Cir. 2008) (reversing indefiniteness finding and explaining that expert testimony "would not prove the '895 patent invalid, since indefiniteness is a legal rather than a factual question").

NanoCellect supports its indefiniteness theory by citing *Dow Chemical* (in which the court allowed indefiniteness arguments before the jury), but that case is readily distinguishable. While acknowledging that courts may "address indefiniteness as a legal matter in the context of claim construction," the *Dow Chemical* court declined to resolve the issue on summary judgment because there was a question of exactly how persons of skill would calculate the claimed "slope of strain hardening coefficient," which the claims required to be "greater than or equal to 1.3." *Dow Chem. Co. v. Nova Chems. Corp.*, 629 F. Supp. 2d 397, 401-07 (D. Del. 2009). That is unlike NanoCellect's arguments here, which hinge not on unresolved technical questions, but on arguments of claim interpretation that the Court expressly rejected at *Markman*.

### i. NanoCellect's argument concerning "deflection" hinges on a rejected interpretation of the prosecution history.

NanoCellect contends that the phrase "deflect a particle in the stream of particles from the stream of particles" is indefinite based on an argument that it made at *Markman*—namely that, during prosecution, the applicants supposedly disclaimed devices like "Dunaway" that shift an "entire stream" when sorting (*i.e.*, that "deflect" the particle *and* the fluid immediately surrounding the particle). *See* D.I. 142 at 35; D.I. 81 at 95:5-96:3, 99:8-108:15; D.I. 66 at 22-27. That argument is purely one of claim construction, and the Court rejected it. D.I. 85 at 7-8.

But even if the Court reconsiders the issue and adopts NanoCellect's disclaimer, there would be no "dispute" related to indefiniteness. The alleged "inconsistency" between Plaintiff's infringement position and the applicants' statements from prosecution reflect NanoCellect's failure to understand how the Wolf is different from Dunaway. That hypothetical dispute has nothing to do with indefiniteness. *See SmithKline*, 403 F.3d at 1340-41.

12

**ii.  NanoCellect attempts to manufacture an artificial "factual dispute" based on its rejected construction of "absorbing."**

NanoCellect's so-called "factual dispute" over the term "absorbing" is another legal

dispute that the Court resolved at *Markman*.  NanoCellect argues that Dr. Meinhart and Dr. Vacca

take "irreconcilable" positions over whether the term "absorbing" █████████████████████

████████  D.I. 142 at 32.  But the Court resolved that dispute as a matter of law when it

rejected NanoCellect's position that "absorbing" means "to receive without recoil or echo."  D.I.

85 at 5.  NanoCellect and Dr. Meinhart simply disagree with the Court's ruling.

Though it need not be considered because it conflicts with the Court's rulings, Dr.

Meinhart's indefiniteness opinion demonstrates why NanoCellect's rejected claim construction

cannot be correct.  In particular, Dr. Meinhart explained at his deposition that ██████████████

████████████████████████████████████████████████████████████

███████████████  D.I. 134, Ex. 25 at 94:17-22; *see also* D.I. 134, Ex. 23 (Meinhart

Reply Report) ¶¶ 129-130.  This is despite the patent expressly stating that "[t]he second side

passage 174b and the second bubble valve 10b *absorb the transient pressure variations* in the

measurement duct 166 induced via the actuator 176."  D.I. 132-1, Ex. 1 ('528 Patent) at 12:27-30

(emphasis added).  This does not demonstrate a fact issue regarding indefiniteness, but rather

confirms that Dr. Meinhart's interpretation is wrong.  *See Phillips v. AWH Corp.*, 415 F.3d 1303,

1315-16, 1327 (Fed. Cir. 2005) (explaining that terms must be construed in light of the

specification and, if possible, to sustain validity).

Moreover, NanoCellect's argument that the claims are indefinite because they supposedly

encompass ████████ devices (D.I. 142 at 34–35) is legally deficient.  NanoCellect does not

even attempt to explain how understanding the claims to capture certain ████████ devices

means there is *uncertainty* as to the scope of the claims.  The claims do not even recite an

"effectiveness."  If an ███████ device is one that fails to "absorb"—or to achieve any other limitation—the claims simply do not cover such a device.  To the extent NanoCellect is arguing that the claims are indefinite because they are "broader than the disclosure in the specification," that is not an indefiniteness argument.  *Blackbird Tech LLC v. ELB Elecs., Inc.*, 2020 WL 5409052, at *5 (D. Del. Sept. 9, 2020); *see also BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("[B]readth is not indefiniteness.").

Finally, NanoCellect suggests that there is an issue regarding the ████████████ ████████████ (D.I. 142 at 34), but it fails to identify how this so-called fact issue could render the claims indefinite.  As Dr. Meinhart acknowledges, ████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *See* D.I. 132-1, Ex. 3 (Meinhart Rebuttal Report) ¶ 74.  Even if that were the case, NanoCellect fails to explain why a person of skill could not ascertain the scope of the claims when they recite "absorbing or dampening." Indeed, under NanoCellect's interpretation, the scope of the claims would clearly range from "meaningful dissipation" (*i.e.*, "dampening") to dissipation that eliminates all recoil and echo.

### iii. The Court expressly rejected NanoCellect's indefiniteness argument regarding the '188 Patent.[4]

At *Markman*, the Court rejected the argument that claim 1 of the '188 Patent is indefinite based on Dr. Di Carlo's supposed difficulty in ascertaining the "arrangement" of the claim

---

[4]      On the evening before this Reply was due, NanoCellect filed a "Notice of Subsequent Fact" that attaches two documents—Cytonome's Patent Owner Response and a related expert declaration from a parallel *inter partes review* proceeding—that have been in NanoCellect's possession for over two weeks.  *See* D.I. 148 and 149.  Cytonome's position is that the notice is improper and should be completely disregarded because it contains new arguments, is not "subsequent authority," and is untimely.  Nevertheless, Cytonome endeavors to address the substance of the new arguments below because they do not support indefiniteness at all.  To the

elements.  D.I. 67, Ex. K ¶ 102; D.I. 85 at 7.  NanoCellect now raises the same argument with respect to claim 17 (D.I. 142 at 29-32), and it should be rejected for the same reasons.[5]

NanoCellect attempts to revive its rejected argument by citing so-called "new evidence" that has no bearing on indefiniteness.  For example, NanoCellect applies the wrong standard for indefiniteness when it faults Dr. Vacca for explaining that he would need to know specific operating parameters to determine the exact dimensions of the "switching region" in a device. *Id.* at 30.  Definiteness does not require the "absolute precision" that NanoCellect demands. *Nautilus,* 572 U.S. at 910.  In any event, when Dr. Vacca did identify the location of the "switching region" in a specific device (the Wolf), Dr. Meinhart ██████████████████ *See* D.I. 132-1, Ex. 3 (Meinhart Rebuttal Report) ¶ 258.  Indeed, Dr. Meinhart expresses ██ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████—the same argument that the Court rejected.  *See* D.I. 132-1, Ex. 4 (Meinhart Opening Report) ¶ 510.

Finally, the new arguments in NanoCellect's untimely "Notice of Subsequent Fact" (D.I. 148 and 149) also fail to address indefiniteness.  The *inter partes review* (IPR) involves a prior art reference ("Gilbert") that is not at issue here.  Because NanoCellect specifically identified Gilbert's side channels and reservoir as part of the claimed "switching region," the question of whether those components can indeed be part of a "switching region" was relevant.  Accordingly, Cytonome sought construction of that term in the IPR, and that is what its expert in that

extent the Court believes that the arguments warrant consideration, Cytonome requests additional briefing.

[5]       NanoCellect's only new argument is that the term "microfluidic chip" lacks antecedent basis.  D.I. 142 at 31-32.  But "[t]he absence of explicit antecedent basis is not dispositive" of indefiniteness. *Home Semiconductor Corp. v. Samsung Elecs. Co.*, 2019 WL 3943334, at *12 (D. Del. Aug. 21, 2019).  And NanoCellect has not made any showing that this particular clerical issue renders the claim scope indefinite.

proceeding (Dr. Arnold) addresses.  The construction of the term "switching region"—and whether it includes side channels and reservoirs—is *not* relevant here because Gilbert is not asserted, and the Wolf infringes regardless.  Indeed, the experts here did not address the precise scope of "switching region," and the parties did not seek a construction from the Court.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc*., 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").  There is simply no evidence that, if the scope of the term were at issue, it would be construed differently than how Dr. Arnold construed it.

IV.     ***DAUBERT* MOTION TO EXCLUDE THE "REASONABLE ROYALTY" DAMAGES ANALYSIS OF IVAN HOFMANN**

As Cytonome explained in the Motion (*see* D.I. 131 at 33-37), the reasonable royalty analysis of NanoCellect's damages expert, Ivan Hofmann, should be excluded for two reasons. First, his analysis fundamentally rests on Dr. Meinhart's irrelevant and unreliable opinions that the Patents-in-Suit relate to "bubble valve technology" and therefore are neither valid nor infringed.  Second, by relying on Dr. Meinhart's "bubble" opinions, Mr. Hofmann violated the basic legal requirement that he must assume both validity and infringement.  Mr. Hofmann's analysis therefore is both unreliable and contrary to law.  Because NanoCellect's Opposition fails to show otherwise, the Court should preclude Mr. Hofmann from testifying about his reasonable royalty analysis or the "bubble" opinions that underpin it.

A.     **Mr. Hofmann's reliance on Dr. Meinhart's "bubble" opinions renders his reasonable royalty analysis inadmissible.**

NanoCellect does not dispute in its Opposition that Mr. Hofmann's analysis depends on Dr. Meinhart's opinions regarding the patented invention's purported use of a gas "bubble" in the buffer chamber (contrary to the Court's claim construction).  NanoCellect even expressly concedes that Mr. Hofmann's analysis reflects his "understanding"—███████████████

16

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████  D.I. 142 at 36.  Thus, Dr.

Meinhart's "bubble" opinions unquestionably are at the heart of Mr. Hofmann's reasonable

royalty analysis.

It follows that if the Court excludes Dr. Meinhart's opinions, it also should exclude Mr.

Hofmann's.  Indeed, NanoCellect does not argue otherwise.  NanoCellect instead doubles down

on its position that Dr. Meinhart's opinions are "indisputably accurate" and "consistent with the

Court's claim construction."  *Id.*  Since Dr. Meinhart's "bubble" opinions are *not* consistent with

the Court's construction—and therefore are both irrelevant and unreliable (for all the reasons

discussed above and in the Motion)—Mr. Hofmann simply may not rely on them.  *See Wis.*

*Alumni Research Found. v. Apple*, Inc., 135 F. Supp. 3d 865, 889 (W.D. Wis. 2015) (stressing

that an expert may "rely on the opinions of other experts, *so long as* all of those opinions are

reliable and non-speculative, and subject to weighing by the trier of fact") (emphasis added);

*Skyhook Wireless, Inc. v. Google, Inc.*, 2015 WL 13620764, at *1-3 (D. Mass. Feb. 18, 2015)

(holding that where a technical expert's "opinions on the comparability of . . . various [real-

world] licenses" were unreliable (and thus inadmissible), a damages expert's testimony that was

based on those opinions "must be excluded" as well); *M2M Sols. LLC v. Motorola Sols., Inc.*,

2016 WL 767900, at *7 (D. Del. Feb. 25, 2016) (Andrews, J.) ("Mr. Bluestein's opinion provides

the foundation for Mr. Bero's reasonable royalty analysis. . . .  Accordingly, because I have

concluded that the methodology Mr. Bluestein employs is unsound, requiring the exclusion of his

testimony, Mr. Bero's damages testimony must be excluded as well.").

NanoCellect attempts to salvage Mr. Hofmann's ████████████████ by

nakedly asserting that ███████████████████████████████████ (D.I.

142 at 37), but that is a total nonstarter.  Nowhere in his Report does Mr. Hofmann state (or even

suggest) that ████████████████████████████████████████████████

████████.  And although those opinions might not have played a direct role in the

mathematical formula by which Mr. Hofmann calculated the ██████████ Mr. Hofmann

testified unequivocally at his deposition that ████████████████████████████

████████████████████████ D.I. 143-1, Ex. W at 51:25-52:8.  He explained that ███

█████████████████████████████████████████████████████

██████████████████████ *Id.* (emphasis added).  His calculations

therefore cannot stand in isolation.  And since ████████████████████████████

█████████████████████████████████ the entire analysis—

████████████████████—should be stricken.

### B.  Mr. Hofmann's analysis improperly fails to assume validity and infringement.

Mr. Hofmann's reliance on Dr. Meinhart's "bubble" opinions also warrants excluding his

reasonable royalty analysis because those opinions are flatly incompatible with the required

assumptions of validity and infringement that are at the core of the hypothetical negotiation

construct.  Mr. Hofmann's assertion that ███████████████████████████████

██████  As he states unambiguously in his Report, ████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████ D.I. 142 at 36 (quoting D.I.

134, Ex. 22 ¶ 88).  Mr. Hofmann's █████████████████████████████

█████████████████████████████████████████████████████

██████████████████████ that are supposed to assume both validity and infringement—thus is

directly contrary to law.

## V.     *DAUBERT* MOTION TO EXCLUDE DR. MEINHART'S OPINIONS CONCERNING CYTONOME'S CONDUCT AT THE PATENT OFFICE

NanoCellect acknowledges that it has not raised an inequitable conduct defense, yet it

maintains that Dr. Meinhart should be free to tell the jury that ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████       *See* D.I. 142 at 38-40 (citing

D.I. 134, Ex. 23 (Meinhart Reply Report) ¶¶ 184-87).  These inflammatory and misleading

opinions are wholly irrelevant to NanoCellect's § 112 defenses, are based on incorrect

assumptions about patent prosecution, and should never be presented to the jury by any expert,

let alone an unqualified one like Dr. Meinhart.

NanoCellect does not attempt to rebut Cytonome's citations to the Federal Circuit cases

and Manual of Patent Examining Procedures demonstrating that neither the filing of continuation

applications, the title of the patent, nor the submission of an inventor's oath from a prior

application are "improper" or have any relevancy to § 112.  Instead, NanoCellect re-characterizes

the statements in paragraphs 184 through 187 as mere "opinions concerning inventor testimony,"

and cites *Nuvo Pharms. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368

(Fed. Cir. 2019) for the proposition that inventor testimony is relevant to written description.

D.I. 142 at 38.  But *Nuvo Pharms.* holds only that inventor testimony may be relevant if the

inventor admits to a lack of support in the specification, which has nothing to do with the

challenged opinions.  923 F.3d at 1381.  Dr. Meinhart's actual opinions tell an inflammatory and

inaccurate story that ██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

19

███████   D.I. 134, Ex. 23 at ¶¶ 185-87.  The only "inventor testimony" cited in support of this theory relates to ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████ None of this is relevant to written description, which is based on an objective reading of the patent.  And Dr. Meinhart's speculation about Cytonome's intent would only confuse and prejudice the jury.

Even if Cytonome's patent application strategies and USPTO procedures were relevant, an expert like Dr. Meinhart cannot provide that testimony at trial.  NanoCellect contends that Dr. Meinhart is qualified to offer opinions on IP strategies and USPTO procedure based on ██ ██████████████████████████████████████████████████ D.I. 142 at 39. But NanoCellect never disclosed or established Dr. Meinhart as a patent law and strategy expert, and even Dr. Meinhart admitted in his deposition that ████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████   D.I. 134, Ex. 25 at 225:23-226:24.  In any event, *no* expert should be permitted to offer opinions on Cytonome's purported intent to engage in an "overall pattern of practice" to "improperly broaden the scope of their claims."  *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 498 (D. Del. 2019) (Andrews, J.) (excluding expert testimony as to "intent, motive, or state of mind" because it "offers no more than the drawing of an inference from the facts of the case") (citations omitted).  Accordingly, the Court should exclude the opinions in paragraphs 184 through 186 of Dr. Meinhart's Reply Report, as well as the baseless conclusion in paragraph 187.

## CONCLUSION

In sum, none of the arguments raised in NanoCellect's Opposition have any merit.  The Court therefore should grant Cytonome's Motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

*Attorneys for Plaintiff Cytonome/ST, LLC*

OF COUNSEL:

Kirt S. O'Neill
Daniel L. Moffett
George Andrew Lever Rosbrook
Clayton N. Matheson
Dorian Ojemen
AKIN GUMP STRAUSS HAUER & FELD LLP
112 E. Pecan Street, Suite 1010
San Antonio, TX  78205
(210) 281-7000

Thomas W. Landers IV
Hannah D. Price
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX  77002
(713) 220-5800

December 11, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 11, 2020, upon the following in the manner indicated:

Ian R. Liston, Esquire                                          *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
   *Attorneys for Defendant*
   *NanoCellect Biomedical, Inc.*

Douglas H. Carsten, Esquire                                    *VIA ELECTRONIC MAIL*
Rhyea Malik, Esquire
Joshua Mack, Esquire
Katherine M. Pappas, Esquire
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real
San Diego, CA  92130
   *Attorneys for Defendant*
   *NanoCellect Biomedical, Inc.*

Adam Burrowbridge, Esquire                                     *VIA ELECTRONIC MAIL*
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street NW, Fifth Floor
Washington, DC  20006
   *Attorneys for Defendant*
   *NanoCellect Biomedical, Inc.*

                              */s/ Anthony D. Raucci*

                              Anthony D. Raucci (#5948)